## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 15-61767-CV-MATTHEWMAN

MARC TOUZOUT, and other similarly
situated individuals,

      Plaintiff(s),

v.

AMERICA BEST CAR RENTAL
KF CORP., d/b/a AMERICA BEST
CRKF CORP. d/b/a SUNSHINE
RENT-A-CAR, KAMAL FEREG,
OMAR FAJARDO, and ROBERTO
HIPTYN,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant, America Best Car Rental KF Corp.'s

("Defendant") Motion for Partial Summary Judgment and Incorporated Memorandum of Law

("Motion") [DE 94].[1]  Plaintiff, Marc Touzout ("Plaintiff"), represented by counsel, filed a

Response [DE 105] and Affidavit [DE 106] in opposition to the Motion.  Defendant filed a Reply

[DE 107].  Plaintiff also belatedly filed an Affidavit of Alexei Frades [DE 110] after Defendant's

Reply was filed and without first seeking leave of court.  The Motion is fully briefed and ripe for

review.  The Court has carefully considered the matter and is fully advised in the premises.

---

[1] The Motion for Partial Summary Judgment was filed solely on behalf of the corporate Defendant, America Best Car Rental KF Corp., as to Counts III through X. *See* DE 94, p. 1. The individual Defendants, Kamal Fereg, Omar Fajardo, and Roberto Hiptyn ("Individual Defendants") did not move for summary judgment. Count III and Count X of the Second Amended Complaint allege causes of action against both the corporate Defendant and the Individual Defendant, Kamal Fereg. [DE 49, pp. 10, 26-27, Wherefore Clauses]. However, because the Individual Defendants did not move for summary judgment, this Order only applies to the corporate Defendant, America Best Car Rental KF Corp.

# I.  BACKGROUND

This case, originally filed on August 24, 2015, arises out of Plaintiff's job with Defendant, America Best Car Rental KF Corp., first as a car-washer, then as an office worker, and alleges overtime, retaliation, discrimination, and harassment claims.  Plaintiff's Second Amended Complaint [DE 49], filed on February 24, 2016, alleges ten different counts, including wage and hour violations under the Fair Labor Standards Act ("FLSA") (Counts I-II), retaliation under the FLSA (Count III), religious discrimination and religious harassment under Title VII and the Florida Civil Rights Act ("FCRA") (Counts IV-VI), national origin discrimination and national origin harassment under Title VII and the FCRA (Count VII), retaliation under Title VII and the FCRA (Counts VIII-IX), and violation of 42 U.S.C. § 1981 (Count X).  *See* DE 49.  Plaintiff seeks actual and compensatory damages, liquidated damages, punitive damages, injunctive relief, and attorney's fees and costs.  *Id.*

# II.  UNDISPUTED MATERIAL FACTS

On February 13, 2017, the Court issued a "Notice of Summary Judgment" that informed Plaintiff in detail, while he was proceeding *pro se*,[2] in accordance with *Griffith v. Wainwright*, 772 F.2d 822, 824 (11th Cir. 1988), of the types of filings he needed to make in opposition to the instant motion.  [DE 95, p. 2].  Plaintiff was warned that, pursuant to Local Rule 56.1, all material facts set forth in the statement served by Defendant would be deemed to be admitted unless controverted by Plaintiff's required concise statement of material facts contending there is a genuine issue to be tried.  *Id.*

---

[2] Plaintiff was initially represented by counsel from the time he filed this action on August 24, 2015, until his counsel withdrew on July 22, 2016.  [DE 78].  Plaintiff proceeded *pro se* in this case from July 26, 2016 until March 20, 2017, when he retained new counsel to represent him.  [DE 104].  Plaintiff is currently represented by counsel.

Southern District of Florida Local Rule 56.1, in pertinent part, requires that the respondent to a summary judgment motion file a response to the movant's statement of material facts which sets forth, as to each numbered undisputed fact that the respondent is contesting, "specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court" that support the respondent's version of the facts. S.D. Fla. L.R. 56.1(a). If a respondent fails to support its response with such citations to the evidence, the result is that the movant's material facts will be deemed admitted. S.D. Fla. L.R. 56.1(b). The procedure provided for in Local Rule 56.1 "is intended to reduce confusion and prevent the Court from having to scour the record and perform time-intensive fact searching. The rule thus reflects a clear policy that it is not the court's obligation to scour the record for a factual dispute that precludes summary judgment." *Joseph v. Napolitano*, 839 F.Supp.2d 1324, 1329 (S.D. Fla. 2012). The Court's prior Notice in this case specifically advised Plaintiff of his obligations under Local Rule 56.1. [DE 95, p. 2].

In response to the instant Motion, Plaintiff, now represented by counsel, filed a Response to Defendant's Partial Motion for Summary Judgment [DE 105]. However, Plaintiff did not file a concise statement of material facts that contends that there is a genuine issue to be tried, as required by Local Rule 56.1. Moreover, although Plaintiff is no longer proceeding *pro se*, and Plaintiff's counsel surely read the Notice of Summary Judgment issued by the Court once he was retained, Plaintiff made absolutely no argument in his Response as to how the information contained in the Response defeats Defendant's Statement of Material Undisputed Facts, nor did Plaintiff even attempt to discuss the facts. A review of Plaintiff's Response shows that Plaintiff did not even address any of the facts of the case or respond to any of Defendant's arguments in its Motion.

3

Plaintiff did file an Affidavit in Opposition to Defendant's Motion for Summary Judgment [DE 106] reciting the facts of the case from Plaintiff's perspective. The Court notes that this Affidavit makes no "specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court" that support his version of the facts. *See* S.D. Fla. L.R. 56.1. Additionally, Plaintiff's Affidavit [DE 106] appears to contradict his own deposition testimony [DE 94-2] in some important areas. For example, at his deposition, Plaintiff stated that his pay was raised from $7.25 per hour to $8.00 per hour at the end of 2012 after he told Defendant Kamal Fereg that he was Muslim. [DE 94-2, p. 7]. However, in his Affidavit, Plaintiff claims that his pay was raised to $8.00 per hour in October of 2011 a few weeks after he was moved from washing cars to working in the office, which was before he told Defendant Kamal Fereg that he was Muslim. [DE 106, p. 2, ¶ 4]. Regardless of these problems with Plaintiff's Affidavit, there is one basic reason why Plaintiff's Affidavit must be disregarded by the Court—Eleventh Circuit precedent. As stated by the Eleventh Circuit:

> The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement. That is, because the non-moving party has failed to comply with Local Rule 56.1—the only permissible way for it to establish a genuine issue of material fact at that stage—the court has before it the functional analog of an unopposed motion for summary judgment.

*Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008). Therefore, pursuant to *Reese*, the Court will treat Defendant's Partial Motion for Summary Judgment as factually unopposed and disregard Plaintiff's Affidavit [DE 106] submitted in response to the Motion.

Plaintiff also belatedly filed an Affidavit of Alexei Frades [DE 110] after Defendant had filed its Reply. Plaintiff did not seek leave of Court to file the Frades Affidavit and it is therefore procedurally improper. Moreover, a review of the Frades Affidavit shows it to be a classic

4

example of an Affidavit which says virtually nothing; it is meaningless in that it says nothing of any factual value. The Frades Affidavit is comprised of three very short paragraphs, which assert absolutely no material facts. But again, regardless of these defects in the Frades Affidavit, the Court will disregard the Frades Affidavit pursuant to *Reese*.

The Court finds that Plaintiff has not properly responded to Defendant's Statement of Material Facts. Further, the Court finds that Defendant's Statement is supported by the record as required and substantially complies with the requirements of Local Rule 56.1, with two exceptions. First, Paragraph 11 states that, "After he quit MBS, Plaintiff asked America Best, the company that had been discriminating against him, allegedly for more hours." [DE 94-1, p. 2, ¶ 11]. The citation for this paragraph directs the Court to Plaintiff's deposition at pages 158-159; however, these pages of Plaintiff's deposition were not filed with the Motion for Partial Summary Judgment. Therefore, this statement is not supported by the record evidence and the Court will not deem this fact admitted. *See Azze v. Dade Medical College, Inc.*, Case No. 15-cv-24175-GAYLES, 2017 WL 880426, *3 (S.D. Fla. Mar. 6, 2017). Second, Paragraph 13 states, "Plaintiff's hours were reduced to forty hours in 2014." [DE 94-1, p. 2, ¶ 13]. However, this is the only paragraph in the Statement of Material Undisputed Facts that does not contain a citation. Furthermore, the schedule log [DE 94-5] that Defendant submitted with its Motion for Partial Summary Judgment indicates that Plaintiff's hours fluctuated throughout 2014, with Plaintiff often working more than forty hours per week. Therefore, this statement is also not supported by the record evidence and the Court will not deem this fact admitted. *See Azze*, 2017 WL 880426 at *3.

Accordingly, the Court adopts the following facts from Defendant's Statement of Material Undisputed Facts:

1. Plaintiff began working for America Best as a car washer in March of 2011. [Deposition of Plaintiff Marc Touzout ("Plaintiff's Depo"), DE 94-2, p. 47:13-18].

2. When he was hired, Plaintiff did not tell Defendant that his real name was Mohamed and not Marc. [Plaintiff's Depo, DE 94-2, p. 53:9-11].

3. When he was hired, Plaintiff did not disclose to Defendant that he was Muslim. [Plaintiff's Depo, DE 94-2, p. 53:14-16].

4. When he started with America Best, Plaintiff worked twenty hours per week, earning approximately $75.00 per day, for ten hours each day. [Plaintiff's Depo, DE 94-2, pp. 48:22-49:13].

5. At the end of 2011, Plaintiff informed America Best, for the first time, that he was Muslim and that he was from Algeria. [Plaintiff's Depo, DE 94-2, p. 53:19-25].

6. At the end of 2012, at some time after he had informed Defendant of his religion and national origin, Plaintiff's pay was raised from $7.25 per hour to $8.00 per hour. [Plaintiff's Depo, DE 94-2, pp. 56:1-57:2].

7. While Plaintiff was working for Defendant, Plaintiff also worked for a company called MBS starting in January of 2013, after he stopped working for another company, Ever Trading. [DE 94-1, p. 2, ¶ 7].

8. Plaintiff quit his job with MBS in June 2013. [Plaintiff's Depo, DE 94-2, pp. 151:21-154:24].

9. Plaintiff quit his job with MBS because he disagreed with the owner of that company to point that it bothered him enough to quit. [Plaintiff's Depo, DE 94-2, pp. 151:21-154:24].

10. At the time he quit his job with MBS, Plaintiff worked four days for MBS and three days for America Best. [Plaintiff's Depo, DE 94-2, p. 156:4-8].

12. In 2013, at some time after he had informed Defendant of his religion and national origin, Plaintiff's weekly hours also increased from 20 hours per week. [Plaintiff's Depo, DE 94-2, p. 57:3-18].

14. Plaintiff filed his Charge with the EEOC on December 12, 2014. [Charge of Discrimination, DE 94-3].

15. In the weeks following the filing of his Charge, Plaintiff worked overtime and his hours were not affected negatively. [Time Records of Plaintiff, DE 94-5, p. 2].

16. Plaintiff filed his Complaint for overtime and minimum wage on August 24, 2015. [Complaint, DE 1].

17. In the months around August of 2015, five employees other than Plaintiff were terminated. [Payroll Summary Reports, DE 94-4].

18. While Plaintiff's hours were reduced in September of 2015, another employee, Alejandro's hours were also reduced and other employees – Daniel and Javier – worked less hours than Plaintiff did. [America Best Payroll Log, DE 94-6].

19. On April 15, 2016, Plaintiff was terminated for reasons other than discrimination, even according to Plaintiff's own admission. [Email between Marc Touzout and Martin Saenz, DE 94-7].

20. On June 6, 2016, after Plaintiff had been terminated, Kamal Fereg filed a lawsuit for defamation in State Court, against Plaintiff. Case No. 132016CA014289000001, in the 11th Circuit, in and for Miami-Dade County, Florida. This, according to Plaintiff, was the last time Kamal Fereg accused him

of supporting ISIS – specifically in Paragraph 9. [Verified Plaintiff's Complaint, DE 94-8; Plaintiff's Depo, DE 94-2, pp. 78:19-79:25].

21. Paragraph 9 of that Complaint does not make the accusation Plaintiff, subjectively, assigns to it. [Verified Plaintiff's Complaint, DE 94-8; Plaintiff's Depo, DE 94-2, pp. 78:19-79:25].

22. When asked to provide the names of any corroborating witnesses, Plaintiff refused. [Plaintiff's Depo, DE 94-2, pp. 87:8-88:24].

23. When asked to provide copies of corroborating documents, Plaintiff refused. [Plaintiff's Depo, DE 94-2, p. 92:13-94:25].

Even though the Court adopts these material undisputed facts, this does not end the Court's review of Defendant's Motion for Partial Summary Judgment. The law is clear that "the movant is not 'absolved of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported by the record.'" *Reese*, 527 F.3d at 1268-69. In other words, a district court may accept the moving party's uncontested facts as true, but it is still required to consider the merits of the moving party's summary judgment motion. The Court will therefore now address whether Defendant has met its legal burden on its Motion for Partial Summary Judgment.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) states in relevant part that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial

8

responsibility of demonstrating to the court by reference to the record that there are no genuine issues of material fact that need to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a moving party has discharged its initial burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," identify specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. Conclusory allegations without supporting evidence are insufficient. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In an employment discrimination case, a plaintiff's "mere belief, speculation, or conclusory accusation that he was subject to discrimination will not create an inference of discrimination or satisfy his burden when responding to a properly supported motion for summary judgment." *Gaston v. Home Depot USA, Inc.*, 129 F.Supp.2d 1355, 1368 (S.D. Fla. 2001).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted). Any doubts regarding whether a trial is necessary must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

So long as the non-moving party has had an ample opportunity to conduct discovery, the non-movant must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the

9

evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249-50.

Disparate treatment claims under Title VII and the Florida Civil Rights Act ("FCRA") are both analyzed under the same burden-shifting framework because the FCRA was patterned after Title VII. *See Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

## IV.     DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant moves for partial summary judgment on Counts III through X on the basis that Plaintiff has not met his burden of proof to provide objective proof or evidence or sufficient specific facts showing that there is a genuine issue of material fact as to these claims, other than Plaintiff's own "subjective, distorted, and uncorroborated view of the events." [DE 94, p. 3]. In regard to Plaintiff's discrimination claims, Defendant asserts that Plaintiff has failed to come forward with any evidence of a non-minority employee who was similar to him and treated more favorably than him. [DE 94, p. 6]. In regard to Plaintiff's harassment claims, Defendant asserts that "Plaintiff has not established what was said, how often, or whether the alleged bad statements were more than mere offensive utterance [sic] (if that even) that went beyond political/news conversations regarding Islam, terrorism, and ISIS." [DE 94, p. 7].

According to Defendant, Plaintiff has not shown any direct evidence that Defendants discriminated against him. [DE 94, p. 8]. In fact, Defendant alleges that in Plaintiff's deposition, he admitted that he was terminated because he denied participation in alleged illegal activities at Defendant's company. *Id.* Defendant claims that "Plaintiff was not treated worse after the date he claims to have disclosed his religion and national original to the Defendant, but better." [DE 94, p. 9].

10

Further, Defendant argues that Plaintiff has not even shown any circumstantial evidence of discrimination or harassment. [DE 94, p. 14]. According to Defendant, "[n]ot a single witness has corroborated Plaintiff's allegations, nor has a single document been presented to show his allegations." [DE 94, p. 17].

Finally, according to Defendant, Plaintiff has not presented any evidence of unlawful retaliation. [DE 94, p. 18]. Defendant submitted schedule logs and time records of Plaintiff showing that Plaintiff's hours were not reduced by Defendant following Plaintiff's filing of the initial Complaint in this matter or following Plaintiff's filing of the charge with the EEOC. [DE 94, pp. 18-19].

In his Response [DE 105], Plaintiff claims that he "did not have an opportunity to conduct substantial discovery during the time that he had been represented by prior counsel, nor thereafter, when he proceeded to represent himself in *pro se* form." [DE 105, p. 2]. According to Plaintiff, he has not taken any depositions of any parties or witnesses nor taken any other discovery to support his claims. *Id.* Therefore, Plaintiff asserts that, pursuant to Federal Rule of Civil Procedure 56(d), Defendant's Motion for Partial Summary Judgment should be denied as premature and Plaintiff should be afforded a fair opportunity to conduct basic discovery. *Id.*

Along with his Response, Plaintiff submitted his Affidavit in opposition to Defendant's Motion for Partial Summary Judgment, providing his view of the case [DE 106, pp. 1-3, ¶¶ 1-18] and listing the names of witnesses "in relation to this case." [DE 106, p. 3, ¶ 19]. Plaintiff also belatedly and without leave of court filed an Affidavit of Witness Opposition to Defendant's Motion for Summary Judgment [DE 110] of Alexei Frades, comprising a total of three short paragraphs, where Affiant Frades alleges that he worked at America Best while Plaintiff worked

11

there and that he has "certain knowledge regarding the problems that [Plaintiff] encountered at this job."[3]

Defendant filed a Reply [DE 107] claiming that "Plaintiff failed to controvert Defendant's statement of material facts and show that there are any genuine issues of material fact." [DE 107, p. 1]. According to Defendant, its Motion for Partial Summary Judgment is not premature because Plaintiff has had ample time to conduct discovery. [DE 107, pp. 3-4]. Defendant argues that Plaintiff has "failed to demonstrate how additional time to conduct discovery would enable him to better rebut Defendant's Motion or set forth any facts in his Affidavit or Response explaining why he is unable to file a substantive response or why he was unable to conduct the additional discovery he is now seeking." [DE 107, p. 5]. Defendant contends that it is entitled to partial summary judgment because Plaintiff did not comply with Federal Rule of Civil Procedure 56 or Local Rule 56.1 in opposing Defendant's Motion. [DE 107, p. 8].

## V. DISCUSSION

### A. Whether Defendant's Motion for Summary Judgment is Premature under Federal Rule of Civil Procedure 56(d)

As an initial matter, the Court will determine whether Defendant's Motion for Partial Summary Judgment is premature pursuant to Federal Rule of Civil Procedure 56(d). Pursuant to Rule 56(d), a non-moving party may request a continuance of the court's ruling on a summary judgment motion, "where additional discovery would enable the non-movant to carry its burden on summary judgment." *Duvall v. Infinity Sales Group, LLC*, Case No. 13-80768-CIV-MARRA/MATTHEWMAN, 2014 WL 11412697, *1 (S.D. Fla. Apr. 18, 2014). Summary judgment should not be granted unless a non-moving party has had "an adequate

---

3 See this Court's discussion of these two affidavits, *supra*, at pp. 4-5 of this Order.

12

opportunity to conduct discovery." *Garmley v. Cochran*, 651 Fed.Appx. 933, 936 (11th Cir. 2016)(citation omitted).

However, the non-moving party must specify the reasons, by affidavit or declaration, that it cannot present facts necessary to justify its opposition to summary judgment. Fed. R. Civ. P. 56(d); *Ashmore v. Sec'y, Dept. of Transp.*, 503 Fed.Appx. 683, 686 (11th Cir. 2013). This affidavit or declaration must "set[] forth with particularity the facts the [non-moving] party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Garner v. City of Ozark*, 587 Fed.Appx. 515, 518 (11th Cir. 2014). Although Plaintiff submitted an Affidavit [DE 106] in opposition to the Motion, that affidavit is devoid of any reasons, let alone specific reasons, that he cannot present facts essential to oppose partial summary judgment for Defendant or what facts Plaintiff expects to discover. Plaintiff only alleges in his Affidavit his view of the case [DE 106, pp. 1-3, ¶¶ 1-18] and that there are five "witnesses in relation to his case." [DE 106, p. 3, ¶ 19]. Further, Plaintiff's Response [DE 105] only asserts that Plaintiff had a falling out with his previous attorney, who did not conduct discovery in Plaintiff's defense, and that he should now be allowed to take depositions of key parties and witnesses. [DE 105, pp. 3-4]. Therefore, Plaintiff does not set forth any specific reasons, pursuant to Federal Rule of Civil Procedure 56(d), why he needs additional discovery to oppose partial summary judgment.[3]

"Additionally, a party will not be entitled to conduct further discovery under Rule 56(d) where the absence of evidence essential to that party's case is the result of that party's lack of diligence in pursuing such evidence through permitted methods of discovery." *Cordero v.*

---

[3] Nor has Plaintiff filed a motion to re-open discovery to permit him to conduct further discovery. Instead, Plaintiff raised this argument for the first time within his Response [DE 105] to Defendant's Motion for Partial Summary Judgment.

13

*Readiness Mgmt. Support, L.C.*, No. 6:11–cv–1692–Orl–19DAB, 2012 WL 3744513, at \*3 (M.D. Fla. Aug. 29, 2012). In this case, Plaintiff, represented by prior counsel, filed his original Complaint on August 24, 2015. [DE 1]. The Court set the original discovery deadline for November 9, 2015, and extended the deadline to December 9, 2015. [DE 29]. The Court then granted Plaintiff leave to amend his Complaint, and Plaintiff filed a Second Amended Complaint on February 24, 2016. [DE 49]. The discovery deadline was extended again to May 2, 2016. [DE 53]. The parties subsequently consented to magistrate judge jurisdiction, and Plaintiff's prior counsel withdrew from the case on July 22, 2016. [DEs 73, 78]. The undersigned held a telephonic status conference, with Plaintiff proceeding *pro se*, reset the trial date, and set a new discovery deadline of December 30, 2016. [DE 88]. Therefore, Plaintiff had approximately sixteen months to conduct discovery, from August of 2015 to December of 2016. This lengthy period of time was more than sufficient to allow Plaintiff to conduct discovery both while he was represented by counsel and while he was proceeding *pro se*. Plaintiff's argument that he did not have sufficient time to conduct discovery is belied by the record and is frivolous.

Plaintiff provides no rationale as to why he did not conduct discovery or schedule depositions before the discovery deadline, besides Plaintiff's vague assertion in his Response that he "had a falling out with his prior attorney, who had not conducted discovery nor taken any depositions in his case." [DE 105, p. 3]. Moreover, when Plaintiff was deposed on December 2, 2016, he refused to name witnesses that may have knowledge about his claims in this case. [Plaintiff's Depo, DE 94-2, pp. 87:8-88:24]. Plaintiff stated that he would not tell defense counsel "the list of [his] witnesses" until just before the trial because, according to Plaintiff, it was "not good for the case." *Id.* Also at his deposition, Plaintiff stated that he would not provide proof that other employees received higher raises than him, and he refused to provide the names of

14

any witnesses who would support his claims of discrimination. [Plaintiff's Depo, DE 94-2, pp.92:2-94:25]. Therefore, it seems that Plaintiff purposely obstructed discovery, at least in part.

Plaintiff apparently did not attempt to conduct any discovery despite being aware of these undisclosed witnesses before the discovery deadline. Therefore, Plaintiff's need to conduct additional discovery is a result of his own delay and lack of diligence. Plaintiff has only himself to blame for his failure to participate in the discovery process.

As stated in Federal Rule of Civil Procedure 1, the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. This matter has been delayed long enough and Plaintiff has failed to establish sufficient grounds that it should be delayed any further.

The Court finds that Plaintiff has not shown that, for specified reasons, he cannot present facts essential to justify his opposition to Defendant's Motion for Partial Summary Judgment. Plaintiff has been dilatory with discovery and the Court will not reward Plaintiff for his dilatory conduct. The Court now turns to its analysis of the specific claims which are the subject of Defendant's Partial Motion for Summary Judgment.

## B. Discrimination (Counts IV, VI, and VII)

Plaintiff brings three discrimination counts, two for religious discrimination (Counts IV and VI) and one for national origin discrimination (Count VII). [DE 49]. Pursuant to Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of that individual's race, religion, or national origin. *Brown v. Sybase, Inc.*, 287 F.Supp.2d 1330, 1339 (S.D. Fla. 2003). "In an employment discrimination case, the plaintiff

15

bears the ultimate burden of proving that the defendant intentionally discriminated against the plaintiff." *Gaston v. Home Depot USA, Inc.*, 129 F.Supp.2d 1355, 1367 (S.D. Fla. 2001). "Where direct evidence of discrimination is unavailable, a Title VII plaintiff may establish a prima facie case of discrimination through circumstantial evidence under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Brown*, 287 F.Supp.2d at 1339.

"A prima facie case of disparate treatment in the workplace may be established by showing that: (1) the plaintiff belongs to a protected class; (2) he was subjected to an adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Gaston*, 129 F.Supp.2d. at 1367. If a prima facie case of disparate treatment is shown, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse job action. *Brown*, 287 F.Supp.2d at 1340.

"With respect to the second element of the prima facie case of discrimination, it is clear that not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Brown*, 287 F.Supp.2d at 1339. A plaintiff must show a serious and material change in the terms, conditions, or privileges of employment to establish an adverse employment action. *Id.* Moreover, "[i]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield*, 115 F.3d at 1562. With this framework in mind, the Court now turns to the three specific discrimination counts alleged by Plaintiff.

1. Religious Discrimination (Counts IV and VI)

Plaintiff's religious discrimination claims assert that Defendant improperly discriminated against Plaintiff, who practices the Muslim religion, when America Best's owner, Kamal Fereg,

spoke about Plaintiff's religion in a derogatory manner and made Plaintiff work longer hours than other employees, who were not Muslim, during the holy month of Ramadan. [DE 49, p. 11, ¶¶ 54-55]. Plaintiff also testified at his deposition that "Roberto" told him twice not to wear perfume at work. [Plaintiff's Depo, DE 94-2, pp. 74:24-76:11].

Further, Plaintiff alleges that Defendant made Plaintiff work seven days a week, did not provide Plaintiff the same vacation time awarded to other employees who were not Muslim, and did not give Plaintiff the same pay raises that were given to other employees who were not Muslim. [DE 49, p. 11, ¶¶ 56-57]. Plaintiff stated at his deposition that he could not take vacation time off and, if he wanted to request vacation time off, he was the only one in the company that had to write a letter requesting the time off. [Plaintiff's Depo, DE 94-2, pp. 85:9-87:13]. When defense counsel asked Plaintiff if he had any proof that he was the only one in the company who had to submit requests for time off in writing, Plaintiff stated that he had "some kind of witness." [Plaintiff's Depo, DE 94-2, p. 87:8-13]. However, Plaintiff refused to tell defense counsel the name of any of his witnesses. [Plaintiff's Depo, DE 94-2, pp. 87:16-88:24].

Plaintiff also alleges that he was discriminated against because his pay was not increased as much as that of other people in the company. However, Plaintiff admitted at his deposition that Defendant increased his hours and his pay after learning that Plaintiff was a practicing Muslim. Plaintiff testified that he started working for Defendant in March of 2011 and worked twenty hours per week at $7.25 per hour. [Plaintiff's Depo, DE 94-2, p. 47:13-18, pp. 48:22-49:13]. According to Plaintiff, he told Kamal Fereg, the owner of America Best, that he was Muslim in December of 2011. [Plaintiff's Depo, DE 94-2, p. 53:19-25]. Plaintiff stated that at the end of 2012 his pay was increased from $7.25 to $8.00 per hour. [Plaintiff's Depo, DE 94-2, pp. 56:1-57:2]. Moreover, Plaintiff stated that Defendant increased his hours in 2013. [Plaintiff's

17

Depo, DE 94-2, p. 57:3-18]. Plaintiff testified that Defendant increased his pay again from $8.00 per hour to $8.05 per hour in October of 2015. [Plaintiff's Depo, DE 94-2, p. 92:2-6]. According to Plaintiff, however, Defendant raised the other employees' pay from $8.00 per hour to $8.50 per hour. [Plaintiff's Depo, DE 94-2, p. 92:7-12]. When defense counsel asked Plaintiff what proof he had that Defendant raised other employee's pay more than Plaintiff's pay, he said he had proof but would not say what evidence there was and started being evasive in his responses. [Plaintiff's Depo, DE 94-2, p. 92:13-94:25].

In an employment discrimination case, a plaintiff's "mere belief, speculation, or conclusory accusation that he was subject to discrimination will not create an inference of discrimination or satisfy his burden when responding to a properly supported motion for summary judgment." *Gaston v. Home Depot USA, Inc.*, 129 F.Supp.2d 1355, 1368 (S.D. Fla. 2001). There is simply insufficient evidence, if any, to show that Plaintiff was discriminated against in this case. The evidence does not support an inference that Plaintiff was discriminated against on the basis of his religion when his hours were increased or when his raise was not as high as another employee's raise. While Plaintiff testified at his deposition that he felt discriminated against, his opinion, without more, is not enough to establish a prima facie case of religious discrimination. *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997).

Even if Plaintiff could show that he was subject to an adverse job action, he has not shown that there were other similarly situated employees outside his classification who were treated more favorably. At his deposition, Plaintiff alleged that he started out washing cars at America Best. [Plaintiff's Depo, DE 94-2, p.47:17-18]. Plaintiff stated that he was subsequently given an office job at America Best in October of 2011. [Plaintiff's Depo, DE 94-2, p. 49:14-18]. According to Plaintiff, other employees were given better raises than he was given. However, in his deposition,

18

Plaintiff alleged that it was the employees who were working outside washing cars that made more money than he did. [Plaintiff's Depo, DE 94-2, p. 92:2-20]. Therefore, these are not similarly situated employees as Plaintiff because Plaintiff was working in the office at the time of his raise.

Plaintiff also contends in his deposition that "Roberto" told Plaintiff on two separate occasions that he could not wear perfume. [Plaintiff's Depo, DE 94-2, pp. 75:23-76:11]. According to Plaintiff, when "Alex" wore perfume, Robert did not say anything to him about it. [Plaintiff's Depo, DE 94-2, p. 75:5-14]. However, Plaintiff does not allege how "Alex" was a similarly situated employee who was not Muslim.

Further, Plaintiff testified in his deposition that he had to request vacation time off in a letter but nobody else in the company had to request vacation time off in writing. [Plaintiff's Depo, DE 94-2, pp. 85:13-86:17]. When defense counsel asked Plaintiff what proof he had that the company did not ask others to put requests for vacation time off in writing, Plaintiff said "I was working there the whole five years. So I know," and then Plaintiff refused to name any witnesses. [Plaintiff's Depo, DE 94-2, pp. 86:18-23, 87:8-25]. Therefore, Plaintiff refused to name any employee that was similarly situated to him and treated more favorably because they were outside his classification.

In conclusion, Plaintiff cannot establish a prima facie case for religious discrimination. Therefore, summary judgment should be granted in favor of Defendant on Plaintiff's religious discrimination claims (Counts IV and VI).

2. National Origin Discrimination (Count VII)

Plaintiff's national origin discrimination claim asserts that Defendant improperly discriminated against Plaintiff, who is from Algeria, when America Best's owner, Kamal Fereg, would continuously remark that people from Algeria are thieves. [DE 49, p. 17, ¶ 98].

Moreover, Plaintiff alleges that Defendant made Plaintiff work seven days a week, did not provide Plaintiff the same vacation time awarded to other employees who were not from Algeria, and did not give Plaintiff the same pay raises that were given to other employees who were not from Algeria. [DE 49, p. 17, ¶¶ 99-100]. According to Plaintiff, despite his complaints and objections to Defendant's discriminatory acts and/or conduct, Defendant took no appropriate remedial action. [DE 49, p. 26, ¶ 196].

Plaintiff's discrimination claims based on religion discussed above are the same as the discrimination claims he makes based on national origin. Therefore, the same analysis as above applies here. Plaintiff cannot establish a prima facie case that he was discriminated against based on his national origin. Accordingly, Defendant should be granted summary judgment on Plaintiff's claim of national origin discrimination (Count VII).

## C. Harassment (Counts V, VI, and VII)

Plaintiff brings three harassment counts, two for religious harassment (Counts V and VI), and one for national origin harassment (Count VII). [DE 49]. Pursuant to Title VII of the Civil Rights Act of 1964, it is also unlawful for an employer to create a hostile work environment for an individual because of that individual's race, religion, or national origin. *See Mack-Muhammad v. Cagle's Inc.*, No. 4:08–CV–11 (CDL), 2010 WL 55912, \*4 (M.D. Ga. Jan. 4, 2010), *aff'd* 379 Fed.Appx. 801 (11th Cir. 2010). A prima facie case of harassment in the workplace may be established by showing: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment was based on his religion; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable."

20

*Lara v. Raytheon Technical Service Co., LLC*, 476 Fed.Appx. 218, 220-21 (11th Cir. 2012). With this framework in mind, the Court will now address Plaintiff's three harassment counts.

### 1. Religious Harassment (Counts V, VI)

Plaintiff's religious harassment claims in Counts V and VI assert that Defendant improperly harassed Plaintiff, who practices the Muslim religion, when America Best's owner, Kamal Fereg, spoke about Plaintiff's religion in a derogatory manner and made Plaintiff work longer hours than other employees, who were not Muslim, during the holy month of Ramadan. [DE 49, p. 13, ¶¶ 70-71]. Specifically, at his deposition, Plaintiff testified that Mr. Fereg told Plaintiff that because he was Muslim he was responsible "for what happen [sic] in the world" and allegedly accused Plaintiff of supporting ISIS on multiple occasions. [Plaintiff's Depo, DE 94-2, pp.73:11-74:22].

Plaintiff also testified that Omar Fajardo, a manager at America Best, would talk to Plaintiff "about the ISIS, about the terrorist, about the Muslim, how bad they are." [Plaintiff's Depo, DE 94-2, pp. 70:12-72:4]. However, according to Plaintiff, Omar Fajardo did not ever accuse Plaintiff of being in ISIS, did not call Plaintiff a dirty Muslim, and did not call Plaintiff a terrorist. [Plaintiff's Depo, DE 94-2, pp. 72:18-73:10].

Further, Plaintiff alleges that Defendant made Plaintiff work seven days a week, did not provide Plaintiff the same vacation time awarded to other employees who were not Muslim, and did not give Plaintiff the same pay raises that were given to other employees who were not Muslim. [DE 49, p. 13, ¶¶ 72-73]. According to Plaintiff, despite his complaints and objections to Defendant's discriminatory acts and/or conduct, Defendant took no appropriate remedial action. [DE 49, p. 14, ¶ 78].

21

Plaintiff asserts that he belongs to a protected group (Muslims), and then vaguely asserts that he was subjected to some harassment because of his religion. However, the harassment asserted was far from sufficiently severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment. *See Mack-Muhammad*, 2010 WL 55912 at \*5.

"Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir.1999) (en banc). "To evaluate the objective severity of the alleged harassment, we look to: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Lara*, 476 Fed.Appx. at 221.

Plaintiff contends that he was subjected to religious harassment because: (1) Mr. Fajardo would talk to him about ISIS and how bad Muslims are; (2) Mr. Fereg accused Plaintiff of supporting ISIS; and (3) Plaintiff was not allowed to wear perfume at work. "Though these allegations demonstrate that Plaintiff's supervisors and co-workers may have been insensitive and rude, the allegations do not rise to the level of severe and pervasive harassment." *Mack-Muhammad*, 2010 WL 55912 at \*5. Plaintiff was unclear about the frequency of this conduct at his deposition. When asked how much he was exposed to the conduct he just responded "always," but then clarified that Mr. Fajardo talked about ISIS twice a week with him and that he was told not to wear perfume on two occasions. [Plaintiff's Depo, DE 94-2, pp. 73:1-10]. The conduct was not severe because, as Plaintiff admitted at his deposition, he was never directly accused of being in ISIS or being a terrorist. [Plaintiff's Depo, DE 94-2, pp.

72:18-73:10]. Moreover, the conduct was not threatening and merely amounted to alleged offensive utterances. *See Mack-Muhammad*, 2010 WL 55912 at *5 (court concluded that plaintiff, who was Muslin, was not subject to religious harassment when supervisors and co-workers made comments calling plaintiff "Mr. Bin Laden" and "Osama" and made jokes and comments about plaintiff's religious dietary restrictions).

For these reasons, the Court concludes that Plaintiff's alleged harassment was neither objectively nor subjectively severe nor pervasive enough to alter Plaintiff's terms or conditions of employment. Accordingly, the Court grants summary judgment in favor of Defendant on Plaintiff's religious harassment claims (Counts V and VI).

2. National Origin Harassment (Count VII)

Plaintiff's national origin harassment claim in Count VII asserts that Defendant improperly created a hostile work environment for Plaintiff, who is from Algeria, when America Best's owner, Kamal Fereg, would continuously remark that people from Algeria are thieves. [DE 49, p. 17, ¶ 98]. At his deposition, Plaintiff testified that Mr. Fereg talked to him about politics in Algeria on multiple occasions when he knew Plaintiff did not want to discuss Algerian politics and Mr. Fereg told Plaintiff on multiple occasions that all Algerians are thieves. [Plaintiff's Depo, DE 94-2, pp. 73:11-74:7]. Moreover, Plaintiff alleges that Defendant made Plaintiff work seven days a week, did not provide Plaintiff the same vacation time awarded to other employees who were not from Algeria, and did not give Plaintiff the same pay raises that were given to other employees who were not from Algeria. [DE 49, p. 17, ¶¶ 99-100]. According to Plaintiff, this environment was offensive to Plaintiff and would be offensive to a reasonable person. [DE 49, p. 18, ¶ 103].

For purposes of this case, the parties do not seem to dispute that Plaintiff belongs to a protected class being from Algeria. However, it is questionable whether Plaintiff was subjected

23

to any harassment because of his national origin. Moreover, even if Plaintiff was subjected to national origin harassment, the harassment was far from sufficiently severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment. *See Khattab v. Morehouse School of Medicine*, Civil Action No. 1:07–CV–196– RWS–LTW, 2009 WL 2600523 (N.D. Ga. Aug. 20, 2009), *aff'd* 404 Fed.Appx. 374 (11th Cir. 2010).

"Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir.1999) (en banc). "To evaluate the objective severity of the alleged harassment, we look to: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Lara*, 476 Fed.Appx. at 221.

Plaintiff contends that he was subjected to national origin harassment because: (1) Mr. Fereg made a few comments that people from Algeria were thieves; and (2) Mr. Fereg talked about politics in Algeria with Plaintiff when Plaintiff did not want to discuss those politics. These allegations do not rise to the level of severe and pervasive harassment. Plaintiff was unclear about the frequency of this conduct at his deposition. When asked how much he was exposed to the conduct he just responded "many time [sic]." [Plaintiff's Depo, DE 94-2, p. 73:24]. Further, the conduct was not severe because Plaintiff does not assert that Mr. Fereg directly accused Plaintiff of being a thief. The conduct was clearly not threatening and merely amounted to offensive utterances, if even that. *See Khattab*, 2009 WL 2600523 at *13 (court concluded that

24

plaintiff, who was from Syria, was not subject to national origin harassment when a co-worker stated she wanted "Americans to kill all Syrians like [plaintiff], like they killed the Iraqis").

For these reasons, the Court concludes that Plaintiff's alleged national origin harassment was neither objectively nor subjectively severe nor pervasive enough to alter Plaintiff's terms or conditions of employment. Accordingly, the Court grants summary judgment in favor of Defendant on Plaintiff's national origin harassment claim (Count VII).

## D. Retaliation (Counts III, VIII, IX)

Plaintiff also brings three retaliation causes of action. Count III alleges retaliation in violation of 29 U.S.C. § 215(a)(3), Count VIII alleges retaliation in violation of Title VII, and Count IX alleges retaliation in violation of the Florida Civil Rights Act ("FCRA").

Pursuant to the Fair Labor Standards Act ("FLSA"), specifically 29 U.S.C.A. § 215, an employer may not "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C.A. § 215(a)(3). "FLSA retaliation claims are governed by the same legal analysis applicable to retaliation claims under Title VII." *Munroe v. PartsBase, Inc.*, No. 08–80431–CIV, 2009 WL 413721, \*7 (S.D. Fla. Feb. 18, 2009) (quoting *Beltran v. Brentwood N. Healthcare Ctr., LLC.*, 426 F.Supp.2d 827, 833 (N.D.Ill.2006)).

Even if an employee's discrimination claims are meritless, an employee may still pursue a claim for retaliation if the employee has a good faith, reasonable belief that the employer's practices violate Title VII. *Joseph v. Napolitano*, 839 F.Supp.2d 1324, 1334 (S.D. Fla. 2012). "Under Title VII, a plaintiff bears the ultimate burden of proving retaliatory treatment by a preponderance of the evidence." *Ekokotu v. Federal Exp. Corp.*, 408 Fed.Appx. 331, 337 (11th Cir. 2011). "A plaintiff may establish a prima facie case of retaliation by showing that (1) he

25

engaged in statutorily protected expression, (2) he suffered an adverse employment action, and (3) there is some causal relationship between the two events." *Id.*

Plaintiff's retaliation claims assert that Defendant improperly reduced Plaintiff's work schedule from approximately eighty hours per week to forty hours per week after Plaintiff verbally complained to Defendant about his unpaid wages (Count III). [DE 49, p. 9, ¶¶ 40-41]. Plaintiff alleges that Defendant further reduced Plaintiff's work schedule to twenty-four hours per week after Plaintiff filed his charge of Discrimination with the Miami-Dade County Commission on Human Rights/EEOC and his original lawsuit in this action. [DE 49, p. 9, ¶ 42]. Additionally, Plaintiff claims that, during this litigation, Defendant further reduced Plaintiff's hours, paid Plaintiff the lowest amount of all employees, and engaged in other acts of retaliation. [DE 49, p. 10, ¶ 43]. Specifically, Plaintiff contends that Defendant raised Plaintiff's pay from $8.00 per hour to $8.05 per hour but raised all other employees' pay from $8.00 per hour to $8.50 per hour. [DE 49, p. 10, ¶ 44].

Plaintiff also alleges that Defendant improperly retaliated against Plaintiff by performing all the above actions after Plaintiff objected to discriminatory actions taken against him based on his religion and national origin (Counts VIII-IX). [DE 49, p. 22-24, ¶¶ 126-29, 137]. Further, Plaintiff claims that Defendant began to micromanage Plaintiff's work and write-up Plaintiff for alleged violations of Defendant's policies while other non-Muslim and non-Algerian employees were not micromanaged or written up for violations of policies. [DE 49, p. 22, ¶ 130]. Plaintiff also contends that, in further retaliation, Defendant is attempting to collect money from Plaintiff for the rental of a car that Defendant required Plaintiff to drive to and from work so Plaintiff could stay late at work and drive back to work early in the morning. [DE 49, p. 22, ¶ 132].

26

It seems clear that Plaintiff engaged in protected conduct in verbally complaining about his unpaid wages, filing an EEOC discrimination charge, and filing this lawsuit. It also appears arguable that Plaintiff suffered adverse employment action when his hours were reduced and he was terminated from his position. The question is whether there was a causal relationship between Plaintiff's protected conduct and the adverse employment actions.

To meet the causal connection element, a plaintiff must show that there was knowledge of the protected conduct and that the protected conduct and the adverse action were not completely unrelated. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). "A 'close temporal proximity' between the employee's protected activity and adverse actions may be sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Ekokotu*, 408 Fed.Appx. at 338. However, the Eleventh Circuit has held that a three-month period between the protected conduct and the alleged retaliatory action, without more, does not allow "a reasonable inference of a causal relation between the protected expression and the adverse action." *Higdon*, 393 F.3d at 1221.

Plaintiff asserts that his hours were first reduced after he verbally complained to Defendant about his unpaid wages, then again after Plaintiff filed his EEOC Charge of discrimination, and yet again after Plaintiff filed the lawsuit in this action. [DE 49, p. 9, ¶¶ 40-42]. Plaintiff filed his EEOC Charge on December 12, 2014. [DE 94-3]. Plaintiff filed this lawsuit on August 24, 2015. [DE 1]. According to Defendant's time records for Plaintiff, Plaintiff's hours were fluctuating around forty hours per week in December of 2014 and January 2015 (some weeks Plaintiff worked forty hours and other weeks Plaintiff worked more than forty hours). [DE 94-5,pp. 2-3]. Then, in February of 2015, Plaintiff's hours were reduced to under forty hours per week. [De 94-5, pp. 1-2]. Moreover, in August of 2015, after Plaintiff filed his original

27

Complaint in this lawsuit, Plaintiff's hours went down to twenty-four hours per week according to Defendant's Payroll Log. [DE 94-6, pp. 1-6]. Then, Plaintiff was terminated on April 15, 2016. [DE 94-7]. Therefore, there is a genuine issue of material fact as to whether Plaintiff's hours were reduced and he was terminated in retaliation for his complaints of unpaid wages, the filing of his EEOC Charge, and the filing of this lawsuit. Accordingly, the Court will not grant summary judgment in favor of Defendant on Plaintiff's Counts III, VIII, or IX.

### E. Violation of 42 U.S.C. § 1981 (Count X)

Plaintiff alleges in Count X that Defendant deprived him of equal rights because he is Arab. If Plaintiff can show that he was "subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981." *Saint Francis College v. Al-Khazraji*, 107 S.Ct. 2022, 2028 (1987). "To state a claim of race discrimination under § 1981, plaintiffs must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004). The activities enumerated in the statute are the right to make and enforce contracts, the right to sue, and the right to give evidence. *Id.*

Plaintiff's equal rights claim alleges that Plaintiff was born in Algeria and he is a citizen of Arab descent and that the corporate Defendant America Best and Individual Defendant Kamal Fereg violated Plaintiff's equal rights "by depriving him of his right to the enjoyment of all benefits, privileges, terms, and conditions of his employment contract as is enjoyed by non-Arab descendants." [DE 49, p. 25, ¶¶ 188, 190]. Plaintiff contends that both Defendants discriminated against Plaintiff on the basis of his Arab race and descent. [DE 49, p. 26, ¶ 194].

The only activity of § 1981 that Plaintiff claims was denied to him was the right to make and enforce contracts. [DE 49, p. 26, ¶ 193].

Plaintiff has not explained in his Second Amended Complaint or at his deposition how any of the alleged conduct of Defendants toward Plaintiff affected his rights to make, enforce, or do anything else with a contract. *Cook v. Randolph County, Ga.*, 573 F.3d 1143, 1157 (11th Cir. 2009). Moreover, there is no evidence that Plaintiff's rights to make and enforce contracts were in any way denied. Therefore, Plaintiff's § 1981 claim fails and the corporate Defendant America Best should be granted summary judgment on this claim (Count X).

## VI.  CONCLUSION

As stated above, the Court grants summary judgment in favor of Defendant, America Best Car Rental KF Corp., as to Plaintiff's claims asserted in Count IV (Violation of Title VII—Religious Discrimination), Count V (Violation of Title VII—Religious Harassment), Count VI (Violation of the FCRA—Religious Discrimination and Harassment), Count VII (Violation of VII—Discrimination and Harassment Based on Plaintiff's National Origin), Count VII [sic] (Violation of the Florida Civil Rights Act of 1992—National Origin Discrimination), and Count X (Violation of 42 U.S.C. § 1981) as to Defendant America Best.  The Court denies Defendant's Partial Motion for Summary Judgment [DE 94] in all other respects.

This case shall proceed to trial on Count I (Wage and Hour Violation by the Corporate Defendant), Count II (Wage and Hour Violation by the Individual Defendants), Count III (Federal Statutory Violation Pursuant to 29 U.S.C. 215(a)(3) (Retaliation)), Count VIII (Violation of Title VII—Retaliation), Count IX (Violation of the FCRA—Retaliation), and Count X (Violation of 42 U.S.C. § 1981) as to Defendant Kamal Fereg.

It is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Partial Summary Judgment and Incorporated Memorandum of Law [DE 94] is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is granted in favor of Defendant on **Counts IV, V, VI, VII, and X**[5] of the Second Amended Complaint.

The parties are reminded that this case is specially set for jury trial beginning on June 12, 2017. [DE 89]. Calendar call is set for June 6, 2017 at 2:00 p.m. [DE 89]. The parties' counsel shall appear for calendar call on June 6, 2017 at 2:00 p.m. The parties and their counsel are directed to appear for trial on June 12, 2017 at 9:30 a.m., and to comply with all pretrial obligations pursuant to the Court's applicable Scheduling Order [DE 88].

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this _11_ th day of May, 2017.

William Matthewman
WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[5] Summary judgment on Count X is granted only as to the Corporate Defendant, America Best. To the extent this Count applies to an Individual Defendant, it will proceed to trial, as discussed above.

30